AO 91 (Rev. 08/09)  Criminal Complaint

*S. Pierce*

# UNITED STATES DISTRICT COURT FILED

for the

Western District of Texas

2011 MAY 17  AM 1:47

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
DEPUTY

| United States of America | ) | |
| v. | ) | Case No. |
| James Troy Brooks | ) | |
| | ) | A-11-M-370 |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___November 2010 to March 2011___ in the county of ___Travis and Williamson___ in the

___Western___ District of ___Texas___, the defendant(s) violated:

| Code Section | Offense Description |
| --- | --- |
| 18 U.S.C. 513 | Counterfeit Securities of State and Private Entities |
| 18 U.S.C. 1344 | Bank Fraud |
| 18 U.S.C. 371 | Conspiracy to commit offese or defraud the United States |

This criminal complaint is based on these facts:

See Attached Affidavit in Support of Criminal Complaint.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

___Tracy L. Steed, U.S. Secret Service Special Agent___
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___5/16/11___

_____
*Judge's signature*

**ROBERT PITMAN**
**U.S. MAGISTRATE JUDGE**
*Printed name and title*

City and state: ___Austin, TX___

FILED

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS** 2011 MAY 17  AM 1: 47
**AUSTIN DIVISION**

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
                   DEPUTY

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | CRIMINAL NO. A·11-M·370 |
| | § | |
| **JAMES TROY BROOKS,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |
| | § | |
| | § | |

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Tracy L. Steed, Special Agent, United States Secret Service, Austin, Texas, being duly sworn, depose and state the following:

1.      I am a Special Agent of the United States Secret Service and have been so employed for 12 years.  I am currently assigned to the Austin, Texas, Resident Office of the United States Secret Service.  In this capacity, I have received extensive training and have experience in conducting investigations related to the production, passing, and dealing of counterfeit checks.  I have also received extensive training related to the manufacturing techniques used in the production of forged instruments of negotiation.  In addition, my other duties and responsibilities include the investigation of alleged violations of federal criminal laws involving fraud in connection with counterfeiting, fraud related to the usage of computers, bank fraud, identification fraud, and access device fraud.

2.      I respectfully submit this affidavit in support of the Government's application in support of a Criminal Complaint against JAMES TROY BROOKS for violations of Title 18 United States Code, Section 371 (Conspiracy to commit offense or to defraud United States), Section 513 (Fraud involving securities of the States and private entities), and Section 1344 (Bank fraud).

3.      Title 18, United States Code Section 371 makes it a crime for two or more persons to conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and for any such persons to do any act to effect the object of the conspiracy.

4.      Title 18, United States Code, Section 513 makes it a crime for a person to make, utter or possess a counterfeit security of a State or organization or to make, utter or possess a forged security of a State or organization with intent to deceive another person, organization or government. The term "security" includes checks.

5.      Title 18, United States Code, Section 1344 makes it a crime for a person to knowingly execute, or attempt to execute, a scheme artifice to defraud a financial institution; or to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses

## The Offense

6.      On or about November 29, 2010, Austin Police Detective Martin Taylor of the United States Secret Service Central Texas Financial Crimes Task Force (CTFCTF) was contacted by the Austin Police Department about the dispatch of a patrol officer to an HEB Grocery Store located at 9414 N. Lamar Blvd, Austin, TX in response to a call from a female that

she was being kept against her will and forced to forge checks. Upon arrival at the HEB, the patrol officer located the female caller, Natasha Walker, and detained her. The patrol officer also detained JAMES TROY BROOKS at the HEB. Detective Martin recognized the name of BROOKS as a suspect who has been involved with several forgery investigations in the Austin area. A review of several Austin Police Reports compiled between 2005 to the present, identified JAMES TROY BROOKS as a suspect in an on-going criminal enterprise in which counterfeit commercial checks were manufactured and individuals were recruited to go to various business locations in Central Texas to cash these checks.

7.     On or about November 29, 2010, Detective Martin contacted your affiant and we both responded to HEB and interviewed Natasha Walker in the HEB loss prevention office. Prior to the start of the interview, Walker was advised of her Miranda Rights via USSS Form 1737B and she said she understood her rights and signed the USSS Form 1737B. Walker stated, in sum, that about one week ago while she was shopping at Wal-Mart located in Round Rock, she was approached by a black male that identified himself as "Anthony", later indentified as JAMES TROY BROOKS. Walker advised that they began talking and eventually exchanged phone numbers. Over a course of a week they communicated via phone several times both by talking and texting. Walker advised that on November 29, 2010, she loaned her vehicle to a friend and her friend was later arrested for not having a driver's license. Walker stated that due to her friend's arrest, Walker's vehicle was impounded. Walker advised she was having financial difficulties and did not have enough money to get her vehicle out of impound.

8.     Walker stated she contacted BROOKS on November 29, 2010 and asked if she could borrow some money from Brooks in order to get her vehicle out of impound. Walker

advised that BROOKS arrived at her apartment located in Round Rock, TX at around 8:00 a.m.

to pick her up. Walker advised that BROOKS first drove her to the Pflugerville Police

Department and told her that he needed to check something regarding a ticket for window tint.

Walker stated that BROOKS then took her to Chase Bank where she has an account located off

Louis Henna Blvd, Round Rock, TX.  Chase Bank's activities affect interstate commerce and the

deposits are insured by the Federal Deposit Insurance Corporation (FDIC).  BROOKS advised

Walker to go into Chase Bank to obtain counter checks.  Walker advised BROOKS that her

account had a negative balance and Chase Bank would not issue her counter checks. Walker

stated she attempted to obtain the checks anyway per BROOKS' instructions and that the Chase

Bank associate would not issue her the checks because her account had a negative balance.

Walker stated she went back to the Brooks' vehicle and told BROOKS she was unable to obtain

the counter checks because she had a negative balance.  BROOKS then made Walker show him

on her phone that her Chase Bank account had a negative balance.  BROOKS then gave Walker

$126.00 to bring her account to a positive balance and once she did, Walker returned to Chase

Bank and was able to obtain (8) counter checks.  BROOKS also asked Walker to get a copy of

one of her pay stubs from the bank.

9.      Walker advised that after leaving Chase Bank, BROOKS then drove her to the

HEB Grocery Store located on Louis Henna Blvd in Round Rock, TX and that she wrote and

then passed one of the Chase Bank counter checks (unknown check number) for the amount of

$201.00 for cash back.  Walker gave BROOKS the $201.00.  Upon leaving the HEB Grocery

Store, BROOKS then drove Walker to Wal-Mart located at 1030 Norwood Park, Austin, TX.

Walker advised that at the request of BROOKS, she wrote and then passed another Chase Bank

counter check # 749368002 for $300.00 and obtained a Wal-Mart gift card. Walker stated that

BROOKS then drove her to a Super-Target Store located off of Highway 45 in Pflugerville, TX.

Walker stated that the Super Target Store would not accept a Chase Bank counter check (#

749368003) she wrote in the amount of $300.00. Walker stated after leaving the Super Target

store, BROOKS drove her to another HEB Grocery Store that she was unsure of the location but

thought it was in the Pflugerville, TX area. Walker stated she wrote and then passed another

Chase Bank counter check (unknown check number) for the amount of $300.00 and obtained six

(6) Visa gift cards valued at $50.00 each which she then gave to BROOKS. Walker stated that

upon leaving the HEB Grocery Store, BROOKS drove her to the Burlington Coat Factory Store

located at 6600 Middle Fiskville Rd, Austin, TX and wrote and then passed another Chase Bank

counter check (#749368005) for the amount of $300.00 to obtain a gift card. Walker advised that

when leaving Burlington Coat Factory, BROOKS called an unknown person on his phone and

gave the person Walker's Texas Drivers License information and BROOKS also texted her DL

information to the person as well. Walker then stated that BROOKS took her to the South Park

Meadows Shopping Center in Austin, TX and that she attempted to get gift cards at Bed Bath and

Beyond with Chase Bank counter check (#749368008) for the amount of $200.00. The Bed, Bath

and Beyond Store refused to take the check. Walker advised she wrote and then attempted to

purchase Gift Cards at the Sears Store at South Park Meadows with Chase Bank counter check (#

749368004) for the amount of $350.00 and that the Sears Store employee also refused to take the

check. Upon leaving the Sears Store, Walker advised that Brooks drove her to JC Penney in

South Park Meadows and that she purchased a $200.00 gift card with a Chase Bank counter

check (unknown check number) she wrote and then passed.

10.     Walker then stated that after leaving JC Penney, BROOKS took her to Southside

wrecker service in Austin, TX and paid the impound fee of $171.65 in cash to get Walker's

vehicle out of impound.  Walker advised that after getting her vehicle back, BROOKS instructed

her to follow him in her vehicle back to Wal-Mart located at 1030 Norwood Park, Austin, TX.

Upon arriving at Wal-Mart, Walker advised they were met by two (2) other unknown black

males in the side parking lot.  The males were driving a black Chevy Impala and the driver of the

Impala handed BROOKS a counterfeit commercial check #47325. The check listed Satellite

Healthcare Central States LLC as the issuing business for the amount of $898.72 and Union

Bank of CA as the issuing bank which is a bank whose activities affect interstate commerce and

is insured by the Federal Deposit Insurance Corporation (FDIC).  The check also had Walker's

name listed as the payee.  BROOKS then handed the check to Walker and told her to go inside

Wal-Mart and go to the young black female at the counter to cash the check. Walker advised that

she went inside Wal-Mart and presented the check to the clerk along with her identification.

Walker advised that BROOKS followed her into the business and when he observed the clerk go

in the back with the check, he immediately called Walker on the phone. Walker advised that

BROOKS was "freaking out" asking why she let the clerk take the check to the back.  BROOKS

then instructed Walker to get the check back and leave the store.  Walker stated she got the check

and her ID back and left.  Once she got out in the parking lot, BROOKS told her to follow him to

the next place to try to cash the check.  Walker advised that BROOKS and the two black males in

the Impala all headed towards the HEB at 9414 N. Lamar Blvd, Austin, TX.  Walker advised that

while en-route to the HEB she started getting scared and called the Austin Police Department.

11.     During the interview of Walker on or about November 29, 2010, Walker

voluntarily provided the following items to your affiant:

- Counterfeit Satellite Healthcare Central States business check #47325 for the amount of $898.72

- Chase Counter check #7493680002 for the amount of $300.00

- Chase Counter check #7493680003 for the  amount of $300.00

- Chase Counter check #7493680004 for the  amount of $350.00

- Chase Counter check #7493680005 for the  amount of $300.00

- Chase Counter check #7493680006 blank check

- Chase Counter check #7493680008 for the amount of $200.00

- Sears Roebuck and Co pay stub

- Southside Wrecker receipt

- JC Penney receipt

- Target Gift Card (No value)

12.     After the completion of the interview of Walker, Detective Taylor and your affiant next made contact with JAMES BROOKS who was seated in the back of a patrol vehicle at the front of HEB.  Upon initial contact, BROOKS indicated that he had information and wanted to cooperate.  BROOKS was then transported to the Austin Police Department North Substation by an APD officer.  BROOKS' vehicle was located in the parking lot of the HEB Grocery Store, however, the keys were not located by the patrol officers.  APD Officer Pandorf maintained surveillance on the vehicle at the HEB parking lot, while BROOKS was being interviewed. BROOKS was placed into a conference room for an interview by Detective Taylor and your

affiant. Prior to the start of the interview, BROOKS was advised of his Miranda Rights via USSS Form 1737B and stated he understood his rights and he agreed to be interviewed by Detective Taylor and your affiant.

13.     During his interview, BROOKS at first stated he met Walker at a club, but later stated he did not remember where he met her. BROOKS stated that Walker contacted him to help her get her vehicle out of storage. BROOKS gave several versions of what occurred on November 29, 2010. BROOKS admitted he obtained the gift cards with the Chase Bank counter checks obtained by Walker and gave Walker a counterfeit payroll check to cash. In sum, BROOKS stated that he is part of an on-going criminal organization involving subjects in Austin, New Orleans and Houston that recruits individuals to obtain their identification information and then provides the information to individuals that manufacture counterfeit commercial checks. BROOKS stated the individuals that were recruited were then taken to various locations to cash the counterfeit checks and were given a percentage of the proceeds. BROOKS stated he was not the person responsible for making the checks and gave the name of "Terrance" (later identified as Terrance Anderson) as the person who actually makes the checks. BROOKS identified himself as a "middleman." BROOKS stated, in sum, that "Terrance" lives in an apartment on Manor Road and drives a "Red Lincoln." When asked how many people he has recruited, BROOKS could not give a solid number, however, he guessed around twenty individuals. BROOKS also stated that he had several counterfeit commercial checks in his vehicle, a 2006 Maroon Chevrolet Monte Carlo Texas,   was parked at the HEB parking lot and was under surveillance by APD. BROOKS produced the key to his vehicle. During BROOKS' interview, your affiant looked through BROOKS' wallet and located the following items:

- A stick-it note with Karen Nesbit personal information on it.

- A counterfeit Huston-Tillotson College payroll check# 337639 paid to the order of Cheryl S Kingley

- A Burlington coat factory gift card

- Wal-Mart Gift card

- JC Penney gift card

- Texas Identification card

- 6-Visa Vanilla gift cards ($50.00 each)

The counterfeit Huston-Tillotson College check identified Texas Commerce Bank, NA, as the issuing bank. Texas Commerce Bank, NA, is a financial institution which is insured by the Federal Deposit Insurance Corporation (FDIC).

14. BROOKS signed a USSS Consent to Search Form SSF 1922 to search his vehicle that remained parked in the HEB parking lot. Detective Taylor and your affiant drove BROOKS back to the HEB and met with Officer Pandorf. Officer Pandorf stated no one had gone in or out of BROOKS' vehicle. With the consent of BROOKS, your affiant searched BROOKS' vehicle and located the following counterfeit checks:

- Counterfeit Satellite Healthcare payroll check #47322 pay to Ira Milligan for the amount $923.76

- Counterfeit Satellite Healthcare payroll check #47323 pay to Tiffany Hornsby for the amount $891.26

- Counterfeit Satellite Healthcare payroll check #47324 pay to Shaleena More for the amount $943.18

The above counterfeit checks identified Union Bank of CA as the issuing bank. Union Bank of CA is a bank insured by the Federal Deposit Insurance Corporation (FDIC). During his interview, BROOKS agreed to cooperate with the Government in locating Terrance Anderson and to also assist in locating the individual identified by him as "Q" who BROOKS advised was manufacturing and selling counterfeit United States Federal Reserve Notes. BROOKS was then released and was instructed by your affiant to make contact with him again on November 30, 2010.

15.     On or about December 02, 2010, BROOKS met with Detective Taylor and your affiant in an attempt to make a controlled buy of counterfeit currency from "Q" later identified as Quincy Sorrells. BROOKS was wired and the audio transmission was monitored by Detective Taylor and your affiant. During the controlled buy, BROOKS obtained $400 in counterfeit $20.00 Federal Reserve Notes in eight uncut sheets.

16.     Between December 02, 2010 and February 23, 2011, BROOKS had no further contact with your affiant or Detective Taylor. On or about February 24, 2011, your affiant contacted JAMES TROY BROOKS and asked him about locating Terrance Anderson in order to see if BROOKS could obtain additional counterfeit checks pursuant to BROOKS' agreement to cooperate with law enforcement officers. BROOKS advised your affiant that Terrance Anderson was not "making" checks anymore and he stated that a Hispanic female named "Rosie" was now making counterfeit checks.

17.     On or about March 22, 2011, your affiant received a telephone voice message at the Austin Resident Office from Austin Police Officer Rolando Gutierrez. The next day, your affiant met with APD Officer Gutierrez and he stated that he received an e-mail on 3/22/11 from

David Barrera, the facility supervisor for the "First Workers Day Labor Center" located at 4916

North IH-35, Austin, Texas. The e-mail stated that he needed to speak to Officer Gutierrez about

an important issue. Officer Gutierrez stated that when he called Barrera back regarding the e-

mail, Barrera stated that on 3/22/11 he was approached by two of his day labor workers

indentified as James White and Margarito De La Torre.  Barrera stated that White and De La

Torre advised him that on the previous day (3/21/11) they were picked up along with a third day

labor worker by the name of Melvin Brown by an individual (later identified as JAMES TROY

BROOKS) who said he needed them to help move some items for a "white guy." White and De

La Torre advised Barrera that once leaving the Day Labor Center, BROOKS drove them to a gray

duplex in the vicinity of Rundberg Lane in Austin, TX where they observed BROOKS go inside

the duplex while they waited in the car.  BROOKS then came back out after a short period of

time with computer generated checks with all three worker's names on them as the payee and

each check was over $700.00.  White also advised Barrera, in sum, that a small child approached

him while they were still at the duplex and asked him what his name was.  White advised the

child that his name was "James" and the child responded that is "daddy's name."  White further

stated that BROOKS quickly tried to cover up what the child had said by telling the child

something to the effect of "You know that is not my name."  White and De La Torre stated that

they were then driven by BROOKS to two separate Wal-Mart stores in Austin, TX at Palmer

Lane and in Round Rock, TX at Louis Henna Boulevard and IH-35. BROOKS instructed the

three day labor workers to go into Wal-Mart to cash the checks for him. White and De La Torre

told Barrera that all three workers were able to cash the checks and were given $120.00 each for

their involvement.  White and De La Torre stated that after cashing the checks BROOKS then

took them back to the Day Labor Center. White and De La Torre stated to Barrera that the Day

Labor Center was already closed for the day and that is why they reported the incident on

3/22/11.

18.    Barrera also advised Officer Gutierrez that facility representative, Anthony

Barrientez, dealt with BROOKS on that day and advised that when he started to write the license

plate down on BROOKS' 2006 Monte Carlo as required by the Labor Center for taking out day

workers, BROOKS quickly asked Barrientez to stop writing the license plate number down by

giving the excuse the vehicle belonged to his grandmother. Barrientez continued recording the

license plate which was Texas LP BF4Y709. A database search of the Texas LP BF4Y709

revealed that the vehicle is registered to JAMES TROY BROOKS, of Pflugerville, TX.

19.    Officer Gutierrez also provided me with written statements by James White and

Margarito De La Torre (in Spanish) that was given to David Barrera on 3/22/11 detailing the

events that took place on 3/21/11.

20.    On or about March 23, 2011, Officer Gutierrez wrote a supplement to his initial

APD Report 2011-5014649 which was submitted on 3/22/11. The supplement detailed that

Officer Gutierrez went back and spoke to James White about the incident with JAMES

BROOKS and White provided additional details. According to the supplement report, the duplex

that White initially thought was off Rundburg Lane is actually located somewhere off Rutland

Drive. According to Officer Gutierrez report, White stated that when arriving at the duplex the

suspect asked for their identification cards and instructed all three day workers to stay in the

vehicle while he went inside the duplex. White advised that the suspect came back out after thirty

minutes and all three workers were given a check with their name as payee. The suspect then

AFFIDAVIT / COMPLAINT                                                                    **Page 12**

took the three day workers with him and picked his kids up from school. During this time one of

the children asked White what his name was and White advised the child his name was "James."

The child responded and said that was "daddy's name" and the suspect tried to cover it up by

saying his name was "Danny." White also advised that after they cashed the checks for the

suspect, the suspect did not take them directly back to the Day Labor Center, but dropped them

off at a bus stop at Rundberg Lane and Lamar Boulevard. The three day workers then caught a

bus to the Day Labor Center which was closed on their return.

21.     On or about March 24, 2011, Austin Police Detective Matt Conley, a member of

the United States Secret Service Financial Crimes Task Force (CTFCTF), and your affiant

interviewed David Barrera regarding the information he provided Officer Gutierrez. Barrera

stated that he did not see BROOKS in the facility on 3/21/11 but facility employee Anthony

Barrientez was the employee who assisted BROOKS and recorded the vehicle's license plate.

Barrera also showed us surveillance video that was recorded on 3/21/11. While observing the

surveillance video, your affiant identified JAMES TROY BROOKS arriving in the 2006 Maroon

Monte Carlo and parking in a parking lot adjacent to the Day Labor Center. The video shows

BROOKS walking into the Day Labor Center and then comes out a short time later with the

workers following him. The video shows BROOKS and the workers walking to the vehicle that

was parked in the adjacent parking lot and then you see his vehicle depart going south on the I-35

service road.

22.     While at the Day Labor Center, Detective Conley and I spoke to James White

regarding the information that he previously provided to Officer Gutierrez and in his statement.

White stated that the suspect told the three workers that they were moving items for a "white

guy" that was inside the duplex and the checks were for the "moving work." White further

advised that he overheard the suspect on his cell phone talking to a woman about having more

checks he needed to get rid of because he was going to Louisiana in two days. White also stated

that the suspect had a "wad" of money on him that day that White estimated as being around

$5000.00. White also described the company that was on the checks as some type of "boys or

girls club like a youth group for kids". White advised that the three workers were driven to the

Wal-Mart in Round Rock, TX where White and De La Torre were instructed by the suspect to go

to customer service to cash the checks. White stated that the suspect also went inside Wal-Mart

but did not accompany them to the customer service center. White stated that the suspect stood

back where he could watch them cash the checks. During the interview with White, your affiant

showed him a photo line-up containing BROOKS' photo and asked him if he recognized the

individual who picked him up on 3/21/11 and provided him with the counterfeit commercial

check. White immediately pointed to photo number #5 and said "That's him right there." When

asked about how sure he was if that was the same individual, White responded he was "positive

that was the guy." The photo in position #5 was that of JAMES TROY BROOKS.

     23.    Continuing on or about March 24, 2011, Detective Matt Conley and your affiant

responded to the Wal-Mart located at 2701 S-IH 35, Round Rock, TX and spoke to Asset

Protection Supervisor John Best regarding the checks supposedly passed at the Wal-Mart

location. Best provided us with the copies of three (3) checks passed at Wal-Mart on 3/21/11

that are involved in this investigation with the following information:

| Company Name | Payee | Check Number | Amount |
|---|---|---|---|
| YCI South LLC DBA Once Upon A Child Buy Account | James White | #4725 | $748.08 |

| YCI South LLC DBA Once Upon A Child Buy Account | Margarito Delatorre | #4726 | $742.05 |
| YCI South LLC DBA Once Upon A Child Buy Account | Fernando Cintron | #4723 | $746.08 |

Upon receiving the checks from Best, your affiant noticed that an additional check in the name of Fernando Cintron was cashed at 12:17 PM on 3/21/11 presumably prior to BROOKS picking up the day labor workers because their checks were cashed at 2:46 pm and 2:47 pm.

24.     Continuing on or about March 24, 2011, Detective Conley and your affiant responded to Wal-Mart Store located at 12900 N IH-35, Austin, TX and spoke to Asset Protection Manager Mayola Jaimes-Lopez regarding this investigation.  He walked us over to the WoodForest National Bank located in Wal-Mart where we were provided with a copy of the check that was cashed by Melvin Brown on 3/21/11 with the following information:

| Company Name | Payee | Check Number | Amount |
| --- | --- | --- | --- |
| YCI South LLC DBA Once Upon A Child Buy Account | Melvin Brown | #4727 | $746.02 |

25.     Later that afternoon, Mayola contacted your affiant and advised that the video footage was ready to be picked-up.  Detective Conley and your affiant responded back to Wal-Mart and met with Mayola and she provided us with a CD of video footage of Melvin Brown cashing the counterfeit check.  Mayola let us preview the video surveillance footage in the Asset Protection office. The video footage clearly shows Melvin Brown being dropped off in the front of Wal-Mart from a Maroon 2006 Chevrolet Monte Carlo and then shows Brown cashing the counterfeit check. The video footage also shows JAMES BROOKS' entering the store. The video shows Brown and BROOKS leaving the store separately and then getting into BROOKS' Maroon 2006 Chevrolet Monte Carlo together and driving off.

26.     Continuing on or about March 24, 2011, Detective Conley contacted Randy Berg, the owner of the "Once Upon a Child" Store located in Austin, TX and asked if he was aware of counterfeit or fraudulent Once Upon a Child checks.  Berg advised Detective Conley he had just discovered a problem with checks this week.  Berg explained that "Once Upon a Child" is a second hand children's store, buying and selling used clothing, toys and other related children's items. Berg advised that there are two stores in Austin, TX.

27.     Berg stated that as he was checking the balance of the checking account this week, he noticed it was in the negative and it should have not been.  Berg stated that his particular account is referred to as a "Buy Account" and is set up for the purpose of buying second hand children's items from customers in order to resell them.  Berg further stated that if the amount of items purchased from a customer is over $20.00 they automatically issue a check from the account in question.  Berg stated that checks drawn on this account are usually very low amounts and are certainly not in the $700 – $1500 range. Berg stated that he had already reported his concerns about checks to the bank where Once Upon a Child account was held, Wells Fargo Bank.  Wells Fargo Bank is a bank whose activities affect interstate commerce and is insured by the Federal Deposit Insurance Corporation (FDIC).  Berg stated at this time, he was only aware of three (3) counterfeit checks.  None of the three checks included the checks that were cashed by Melvin Brown, James White, Margarito Delatorre or Fernando Cintron.  Berg then provided Detective Conley with the following information on the counterfeit checks that he was currently aware of:

| Company Name | Payee | Check Number | Amount |
|---|---|---|---|
| YCI South LLC DBA Once | Paul Adams | #4717 | $743.19 |

| Upon A Child Buy Account | | | |
| YCI South LLC DBA Once Upon A Child Buy Account | Krystal Hernandez | #4720 | $843.89 |
| YCI South LLC DBA Once Upon A Child Buy Account | Krystal Hernandez | #4722 | $1500.93 |

28.     On or about March 28, 2011, your affiant was contacted by David Barrera from the First Workers Day Labor Center.  Barrera advised that some of the day labor workers had reported to him that JAMES BROOKS is still coming by the Day Labor Center after the center closes in order to pick up day workers to cash counterfeit checks.

29.     Continuing on or about March 28, 2011, your affiant responded to the Round Rock, TX Wal-Mart and met with Asset Protection Supervisor John Best.  Best gave your affiant a CD of the video footage recorded on 3/21/11 of JAMES BROOKS and Fernando Cintron. The CD contained still photos of Cintron and BROOKS entering and exiting the store separately. The CD also contained video surveillance footage of Cintron cashing the counterfeit check at the customer service desk while BROOKS was in the adjacent book section of the store watching Cintron cash the counterfeit check.  The CD also contained a still photo of BROOKS' 2006 maroon Monte Carlo leaving the parking lot.

30.     On or about March 31, 2011, your affiant received additional video surveillance footage from Asset Protection Supervisor John Best at the Round Rock, TX Wal-Mart. This video footage showed day labor workers James White and Magarito Del La Torre enter Wal-Mart at the approximate times the checks were cashed at the Wal-Mart customer service desk on 3/21/11. The video also shows JAMES BROOKS enter Wal-Mart separately from White and Del La Torre.  The video also captures BROOKS, White and Del La Torre depart the store separately

and then get into BROOKS maroon 2006 Monte Carlo and depart the parking lot. Your affiant also received a still surveillance photograph of James White and Margarito De La Torre at the customer service desk on 3/21/11 cashing the counterfeit checks.

31.     On or about April 01, 2011, USSS Special Agent Devon Kiernan and your affiant responded to the First Workers Day Labor Center to interview day labor worker Craig Turner. Turner advised me that he and another worker (Jerry Eubanks) was picked up on Saturday (3/26/11) at the Day Labor Center by two men that wanted them to cash checks for them. Turner advised that the two men took them to a "white stone" duplex near Rundberg Lane in Austin, TX near a school. Turner stated that the men asked for his Texas identification card. Turner stated that the two men went into the duplex while he and Eubanks stayed in the car. Turner stated that the two men came out approximately 30 minutes later with checks made with their names on them as payee. Turner stated that the two men drove them to the Wal-Mart store off of Louis Henna Blvd in Round Rock, TX where they were instructed to go to the customer service counter to cash the checks. Turner stated the driver of the vehicle went into Wal-Mart and watched as he and Eubanks attempted to cash the checks. Turner advised me that the checks "would not go through" and Wal-Mart would not cash them. Turner stated that he and Eubanks were then transported to a Target Store somewhere off of IH 35 near Pflugerville, TX and attempted to cash the checks there. The Target Store also refused to cash the checks and Turner then stated that the two men took them to another Wal-Mart location near Palmer Lane in Austin, TX. That Wal-Mart also refused to cash the checks. Turner stated that he and Eubanks were then dropped off at a bus stop near Rundberg Lane and Lamar Blvd without cashing any checks.

32.     During our interview with Turner, your affiant asked Turner to look at two photo

AFFIDAVIT / COMPLAINT                                                                                   **Page 18**

line-ups containing the photos of JAMES BROOKS and Terrance Anderson. Turner immediately picked JAMES BROOKS out of the first photo line-up at position #5 and said that was the individual who was driving them around and is also the individual who went into the various store locations to watch them attempt to cash the checks. Turner then observed the second photo line-up and immediately picked out Terrance Anderson at position #3 as the individual who was in the front passenger seat of the vehicle when they were attempting to cash the counterfeit checks and was the same individual who accompanied BROOKS into the duplex to manufacture the counterfeit checks. Turner stated that Terrance Anderson stayed in the vehicle each time they were taken to a store location.

33.    On or about April 07, 2011, your affiant received additional video surveillance footage from the Wal-Mart store located at 2701 S-IH 35, Round Rock, TX of the transactions that occurred on 3/26/11 involving day labor workers Craig Turner and Jerry Eubanks. Upon reviewing the video footage, it clearly shows Turner and Eubanks attempting to cash checks at the customer service desk. The video also show JAMES BROOKS in a bright red "football jersey" and red hat going into Wal-Mart and watching Turner and Eubanks attempt to cash the checks.  The video also shows BROOKS meeting up with Turner and Eubanks in the store and all three departing the store together. The video also shows what appears to be Turner giving BROOKS back the check while they were walking out of the store. The video shows BROOKS, Turner and Eubanks get into BROOKS' maroon Chevrolet Monte Carlo and departing the Wal-Mart parking lot.

Based on the foregoing facts, there is probable cause to believe that JAMES TROY BROOKS committed and/or attempted to commit one or more offenses in violation of Title 18, United States Code, Sections 513, and 1344, and did conspire to commit one or more of said offenses, in violation of Title 18, United States Code, Section 371.

FURTHER AFFIANT SAYETH NAUGHT.

Tracy L. Steed
Special Agent
United States Secret Service
Austin, Texas

Subscribed and sworn to before me at Austin, Texas, on this **16** day of May, 2010.

UNITED STATES MAGISTRATE JUDGE

AFFIDAVIT / COMPLAINT

Page 20